IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

CHAUNCY DESTRE BASHAM                                              PLAINTIFF

v.                           Civil No. 4:19-cv-04099

RICHARD CONKLETON                                                  DEFENDANT

## REPORT AND RECOMMENDATION

The Plaintiff, Chauncy Destre Basham, originally filed this *pro se* action on August 21, 2019, pursuant to 42 U.S.C. § 1983.  (ECF No. 1).  Plaintiff's application to proceed *in forma pauperis* was granted.  (ECF No. 3).  An Amended Complaint was filed on September 26, 2020. (ECF No. 7).  On November 12, 2019, this Court dismissed certain claims contained in Plaintiff's Amended Complaint.  (ECF No. 8).  The only remaining claim in this action is an individual capacity claim against Patrol Officer Richard Conkleton for cruel and unusual punishment.  (ECF No. 8, 11, 12).

Before the Court is Defendant's Motion for Summary Judgment.  (ECF No. 27).  The Plaintiff has responded (ECF No. 38, 39) to the Motion and the matter is now ripe for decision. Pursuant to the provisions of 28 U.S.C. § 636(b)(1) and (3)(2011), the Honorable Susan O. Hickey, Chief United States District Judge, referred this case to the undersigned for the purpose of making a Report and Recommendation.

### I.  FACTUAL BACKGROUND

As set forth above, the remaining claim in Plaintiff's Amended Complaint is an individual capacity claim against Defendant Conkleton for cruel and unusual punishment.  (ECF No. 7, 8, 11, 12).  Plaintiff claims that Conkleton "placed me in a hot squad car which caused me to be sick with severe dehydration."  (ECF No. 7 at 7).  Plaintiff seeks compensatory and punitive damages

1

as relief for his claim. (ECF No. 7 at 9).

Defendants' Motion for Summary Judgment attaches several exhibits: (1) Defendant Conkleton's video taken during Plaintiff's arrest (ECF No. 28-1); (2) Officer Dixon's video taken during Plaintiff's arrest (ECF No. 28-2); (3) Texarkana, Arkansas Police Department (TAPD) Incident Reports (ECF No. 28-3); (4) Plaintiff's ambulance records (ECF No. 28-4); (5) Plaintiff's emergency room records (ECF No. 28-5); (6) Plaintiff's Deposition (ECF No. 28-6); and (7) Plaintiff's court records from the Circuit Court of Miller County, Arkansas (ECF No. 28-7).

Plaintiff has responded to the Defendants' Motion but does not attach any supporting evidence. (ECF No. 38, 39).

After reviewing the summary judgment pleadings submitted, I find the following material facts not in dispute:

On July 9, 2019, at approximately 10:47 p.m., Defendant Richard Conkleton, an officer with the Texarkana, Arkansas, Police Department ("TAPD"), conducted a traffic stop of an SUV with expired tags being operated by Plaintiff Chauncy Basham. (ECF No. 28-1, 28-2, 28-3, 28-6).

Officer Garrett "Chase" Dixon arrived on the scene as backup, and Officer Jimmy Woolery was riding with Officer Dixon. (ECF No. 28-1, 28-2).

Plaintiff exited his vehicle and walked towards Defendant Conkleton. Defendant Conkleton made contact, and patted down Plaintiff's outer clothing for weapons, locating nothing. (ECF No. 28-1, 28-2).

Defendant Conkleton asked Plaintiff for his identification. Defendant Conkleton ran a warrant check on Plaintiff. Plaintiff had no active warrants, but he did have a search waiver on

file.[1]  (ECF No. 28-1, 28-2, 28-3).

Defendant Conkleton noticed that Plaintiff started sweating as they were talking.  (ECF No. 28-1, 28-2, 28-3).  Defendant Conkleton asked Plaintiff if he had taken any type of medication or narcotics prior to the stop, which Plaintiff denied.  *Id*.  Defendant Conkleton asked Plaintiff if there was anything illegal inside of the vehicle before he began searching it.  Plaintiff admitted that there was a "baggie" inside the vehicle.  *Id.*  Defendant Conkleton read Plaintiff his Miranda rights, and Plaintiff confirmed that he understood them.  *Id.*

Defendant Conkleton placed Plaintiff in handcuffs, and put him in the back seat of his patrol vehicle.  (ECF No. 28-1, 28-2, 28-3).  According to the videos, Plaintiff was placed in the vehicle at approximately 10:59 p.m.  (ECF No. 28-1, 28-2).

As Defendant Conkleton walked to the front driver side window of the SUV, he noticed a clear cellophane baggie in the driver seat with a clear like substance inside it.  (ECF No. 28-1, 28-2, 28-3).  According to the incident report, based on his training as a law enforcement officer, Defendant Conkleton believed the substance to be methamphetamine.  (ECF No. 28-3).  The substance was later determined to be 1.39 grams of methamphetamine.  (ECF No 28-3).  The vehicle was searched, and no other contraband was located.  (ECF No. 28-1, 28-2, 28-3).

As Defendant Conkleton walked around his patrol unit, he noticed that Plaintiff was lying across the back seat and sweating very heavily.  (ECF No. 28-1, 28-2, 28-3).  Defendant Conkleton asked Plaintiff again if he had taken any medication.  Plaintiff again denied that he had taken anything.  *Id*.

Defendant Conkleton was able to get Plaintiff to sit back up in the seat.  As Defendant Conkleton began to transport Plaintiff to the Miller County Detention Center, Plaintiff laid back

---

[1] While unclear, it appears Plaintiff was subject to either parole or probation supervision at the time of the arrest.  ECF No. 28, p.2.

across the seat again. (ECF No. 28-1, 28-3). Defendant Conkleton observed that Plaintiff appeared to go in and out of consciousness as he laid across the seat. *Id*.

Defendant Conkleton advised dispatch to notify LifeNet, the ambulance service, to respond to his location for an emergency due to suspected overdose. (ECF No. 28-1, 28-3, 28-4). LifeNet was notified of the call and en route at 11:18 p.m., arriving on scene at 11:23 p.m. (ECF No. 28-4). LifeNet transported Plaintiff to Wadley Regional Medical Center's emergency room to be evaluated. Plaintiff arrived at the ER at approximately 11:43 p.m. (ECF No. 28-4).

Ambulance personnel assessed Plaintiff and all of his vitals were in normal ranges with "no findings or complaints," "no remarkable findings," and a "strong" pulse. (ECF No. 28-4).

While at the ER, Plaintiff's temperature approximated around 97.5 degrees Fahrenheit. Multiple lab and radiological tests were performed, with the only results of note being that Plaintiff screened positive for amphetamines and had a blood alcohol percentage of 0.028%. (ECF No. 28-5).

Plaintiff was administered two bags of saline solution while in the ER. (ECF No. 28-5). Plaintiff was cleared and discharged by the ER staff at approximately 4:03 a.m., at which time he was transported to the jail and booked in for possession of a controlled substance less than 2 grams. (ECF No. 28-5, 28-7).

After the arrest, Plaintiff was interviewed by TAPD Detective Romeo Cross at the jail. (ECF No. 28-3). Plaintiff reported that he had a drug problem, that he had been using for a long time, that he usually used dope every day by smoking it, that he usually traded mechanic work for drugs. Plaintiff reported that on the night he was arrested, he had been working on a SUV and drove it around the block to make sure it was running correctly, which is when Defendant Conkleton pulled him over. Plaintiff reported that he told Defendant Conkleton he had some drugs in the car. (ECF No. 28-3).

Plaintiff pled guilty to and was convicted of the drug possession charge. (ECF No. 28-7).

Less than 30 minutes elapsed from when Plaintiff was placed into the back of the patrol car until the ambulance arrived. (ECF No. 28-1, 28-2). Specifically, from the video recordings of the arrest, it appears that Plaintiff was placed into the back of the patrol car at 10:59 p.m. (ECF No. 28-1, 28-2). LifeNet arrived at the scene at 11:23 p.m. (ECF No. 28-4).

The entire time Plaintiff was in Defendant Conkleton's patrol car, the car's engine was running and the windows were down. (ECF No. 28-1, 28-2).

In the instant Motion, the Defendant argues that he is entitled to summary judgment because he did not violate Plaintiff's constitutional rights. Alternatively, the Defendant argues that he is entitled to qualified immunity.

The Plaintiff denies that the Defendant is entitled to summary judgment.

## II. LEGAL STANDARD

Summary judgment is appropriate if, after viewing the facts and all reasonable inferences in the light most favorable to the nonmoving party, the record "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). "Once a party moving for summary judgment has made a sufficient showing, the burden rests with the non-moving party to set forth specific facts, by affidavit or other evidence, showing that a genuine issue of material fact exists." *Nat'l Bank of Comm. v. Dow Chem. Co.*, 165 F.3d 602, 607 (8th Cir. 1999).

The non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. "They must show there is sufficient evidence to support a jury verdict in their favor." *Nat'l Bank*, 165 F.3d at 607 (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)). "A case founded on speculation or suspicion is

insufficient to survive a motion for summary judgment." *Id.* (citing *Metge v. Baehler*, 762 F.2d 621, 625 (8th Cir. 1985)). "When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III. DISCUSSION

As set forth above, the only remaining claim in this matter is Plaintiff's individual capacity claim against Defendant Conkleton for cruel and unusual punishment. (ECF No. 8, 11, 12). Plaintiff specifically claims Defendant Conkleton "placed [him] in a hot squad car which caused [him] to be sick with severe dehydration." (ECF No. 7 at 7-8). Although Plaintiff cites to the Eighth Amendment's prohibition of cruel and unusual punishment, when a claim such as this arises in the context of an arrest, it is most properly characterized as one invoking the protections of the Fourth Amendment. *Graham v. Connor*, 490 U.S. 386, 395 (1989). *See also Brown v. City of Golden Valley*, 574 F.3d 491, 496 (8th Cir. 2009).

In evaluating an excessive force claim under the Fourth Amendment, a court must consider whether the force was objectively reasonable under the circumstances, "rely[ing] on the perspective of a reasonable officer present at the scene rather than the '20/20 vision of hindsight.'" *Carpenter v. Gage*, 686 F.3d 644, 649 (8th Cir. 2012)(quoting *Graham v. Connor*, 490 U.S. 386 (1989)). The Supreme Court has found that "unnecessary exposure to the heat of the sun . . ." can violate constitutional requirements (*Hope v. Pelzer*, 536 U.S. 730, 737 (2002)); and, courts have specifically found that "[d]etaining an individual in a hot, *unventilated* squad car for an extended period of time can give rise to a Fourth Amendment violation." *Joseph v. Donahue*, 392 F.Supp. 3d 973, 990 (D. Minn. 2019)(emphasis added). However, circumstances such as the length of the detention and any use of the car's cooling or ventilation systems factor into a

6

determination on whether a violation has occurred. *Id. See also Burkett v. Kiefer*, 310 F.3d 937, 945 (6th Cir. 2002)(finding excessive force where suspect was detained in a police car with the windows rolled up on a 90 degree day). *See, e.g., Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001)(finding no violation where arrestee with multiple sclerosis was detained in an unventilated car in the sun for 30 minutes even though she complained that she could not breathe); *Aria v. Amador*, 61 F.Supp.3d 960, 976 (E.D. Cal. 2014)(finding no violation after detention in a "very hot" car for less than 15 minutes); *Esmont v. City of New York*, 371 F.Supp. 2d 202, 214 (S.D.N.Y. 2005)(finding no excessive force after suspect left in hot car for 10 minutes); *Kanvick v. City of Reno*, 2008 WL 873085 (D. Nev. Mar. 27, 2008)(finding no excessive force where plaintiff was held for 17 minutes in squad car on a 68 degree day).

The undisputed facts show that Plaintiff was detained for less than thirty minutes in Defendant's squad car. The Plaintiff was placed in the squad car at approximately 10:59 p.m. – well after sunset. (ECF No. 28-1, 28-2). LifeNet ambulance service arrived at the scene at 11:23 p.m. (ECF No. 28-4). Although Plaintiff's unverified arguments dispute this, the proof also shows that the squad car was running and the windows were down during the entire incident. (ECF No. 28-1, 28-2, 38, 39). Plaintiff was able to get air flow through vents between the barrier separating the front and back seats of the car. (ECF No. 28-1, 28-2). Finally, although Plaintiff contends that he suffered a heat stroke as a result of the detention, his medical records do not so indicate, and instead, show a positive screening for amphetamines. (ECF No. 28-5).

The facts presented indicate that the force used to detain the Plaintiff was objectively reasonable and was not excessive. Further, having found that the facts do not make out a constitutional violation, the Defendant is entitled to qualified immunity. *See, e.g., Krout v.*

*Goemmer*, 583 F.3d 557, 564 (8th Cir. 2009). (unless the facts make out a violation of a constitutional right the Defendant is entitled to qualified immunity).

Accordingly, the Defendant is entitled to summary judgment on Plaintiff's claim against him.

### IV. CONCLUSION

For the reasons stated above, I recommend that Defendant's **Motion for Summary Judgment (ECF No. 27)** be **granted**.

**The parties have fourteen days from receipt of the Report and Recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1).  The failure to file timely objections may result in waiver of the right to appeal questions of fact.  The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 28th day of December 2020.

/s/ *Barry A. Bryant*
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE